O

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BRIDGETTE ROULHAC, ) | NO. EDCV 07-01676-MAN |
| ) | |
| Plaintiff, ) | |
| ) | MEMORANDUM OPINION |
| v. ) | |
| ) | AND ORDER |
| MICHAEL J. ASTRUE, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |

Plaintiff filed a Complaint on January 4, 2008, seeking review of the denial by the Social Security Commissioner ("Commissioner") of plaintiff's application for supplemental security income ("SSI"). On February 4, 2008, the parties consented to proceed before the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c). The parties filed a Joint Stipulation on September 24, 2008, in which: plaintiff seeks an order reversing the Commissioner's decision and awarding benefits or, in the alternative, remanding the matter for a new administrative hearing; and defendant seeks an order affirming the Commissioner's decision. The Court has taken the parties' Joint Stipulation under submission without oral argument.

**SUMMARY OF ADMINISTRATIVE PROCEEDINGS**

On January 17, 2003, plaintiff protectively filed an application for SSI.[1] (Administrative Record ("A.R.") 38, 78-81, 435.) Plaintiff alleges an inability to work since January 17, 2003, due to HIV and complications therefrom, back and knee pain, fatigue, headaches, and depression. (A.R. 25, 50, 83.) She has past relevant work experience as a "cafeteria attendant, cashier II, home attendant, and child monitor." (A.R. 446-47.)

Plaintiff's application was denied initially, upon reconsideration, and by Administrative Law Judge Philip E. Moulaison in a written decision dated April 27, 2005. (A.R. 24-29, 50-54, 56-59.) On June 13, 2005, the Social Security Administration received plaintiff's request for review of the hearing decision (A.R. 11), and on June 25, 2005, the Appeals Council denied review of the decision (A.R. 8-10).

On August 3, 2005, plaintiff filed a Complaint in this Court in Case No. EDCV 05-00669. On March 8, 2007, this Court reversed the ALJ's decision and remanded the case for further administrative proceedings (the "2007 Order"). (A.R. 451-66.) On April 26, 2007, the Appeals Council remanded the case back to an Administrative Law Judge for compliance with this Court's 2007 Order.[2] (A.R. 479-82.)

---

[1]   The actual application filing date is February 7, 2003. (A.R. 78.)

[2]   In its Order effectuating this Court's 2007 Order, the Appeals Council stated:

> [Plaintiff] filed a subsequent application for Title XVI benefits on May 19, 2005, and the State agency found that she

On July 24, 2007, a remand hearing was held before Administrative Law Judge Lowell Fortune ("ALJ"). (A.R. 632-68.) On October 19, 2007, the ALJ issued an unfavorable decision; that decision is now at issue in this case. (A.R. 435-48.)

**SUMMARY OF ADMINISTRATIVE DECISION**

In his written decision, the ALJ found that plaintiff suffers from the following "severe" impairments: human immunodeficiency virus (HIV); chronic dislocation, left shoulder; mood disorder secondary to medical condition; and cocaine dependence. (A.R. 438.) The ALJ further found that plaintiff does not have an impairment or combination of impairments that meets or medically equals Listings 1.02B, 12.04, 12.09, or 14.08, or any other listed impairment set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1. (*Id.*)

The ALJ determined that plaintiff had the physical residual functional capacity to perform light exertion, and mentally, plaintiff is able to understand moderately detailed instructions and perform moderately complex tasks in a habituated setting. (A.R. 436.) In reliance on the opinion of the medical expert, the ALJ rejected the

---

became disabled on May 1, 2005. The State agency relied on new evidence from [plaintiff's] treating sources. The Appeals Council hereby affirms the finding that [plaintiff] was disabled beginning May 1, 2005.

The Appeals Council vacates the Administrative Law Judge's decision and remands this case to an Administrative Law Judge for further proceedings on the issue of disability prior to May 1, 2005.

(A.R. 481.) Accordingly, the time period in issue is January 17, 2003, through April 30, 2005.

3

opinions of plaintiff's treating physicians, Harvey A. Elder, M.D., and Wilfred W. Shiu, M.D. (A.R. 441, 445-46.)

Based on the ALJ's residual functional capacity assessment and the testimony of a vocational expert, the ALJ found that plaintiff is unable to perform any of her past relevant work, but jobs exist in significant numbers in the national economy that plaintiff can perform. (A.R. 446-47.) Accordingly, the ALJ concluded that plaintiff has not been under a disability, as defined by the Social Security Act, since February 7, 2003, the date the application was filed, through April 30, 2005. (A.R. 448.)

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (citation omitted). The "evidence must be more than a mere scintilla but not necessarily a preponderance." Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003). While inferences from the record can constitute substantial evidence, only those "'reasonably drawn from the record'" will suffice. Widmark v. Barnhart, 454 F.3d 1063, 1066 (9th Cir. 2006)(citation omitted).

Although this Court cannot substitute its discretion for that of the Commissioner, the Court nonetheless must review the record as a

whole, "weighing both the evidence that supports and the evidence that detracts from the [Commissioner's] conclusion." <u>Desrosiers v. Sec'y of Health and Human Servs.</u>, 846 F.2d 573, 576 (9th Cir. 1988); *see also* <u>Jones v. Heckler</u>, 760 F.2d 993, 995 (9th Cir. 1985).  "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1039-40 (9th Cir. 1995).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. <u>Burch v. Barnhart</u>, 400 F.3d 676, 679 (9th Cir. 2005).  However, the Court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." <u>Orn</u>, 495 F.3d at 630; *see also* <u>Connett</u>, 340 F.3d at 874.  The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists only when it is "clear from the record that an ALJ's error was 'inconsequential to the ultimate nondisability determination.'" <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 885 (9th Cir. 2006)(*quoting* <u>Stout v. Comm'r</u>, 454 F.3d 1050, 1055-56 (9th Cir. 2006)); *see also* <u>Burch</u>, 400 F.3d at 679.

**DISCUSSION**

Plaintiff alleges the following four issues:  (1) whether the ALJ properly considered the opinion of plaintiff's treating physician, Harvey A. Elder, M.D.; (2) whether the ALJ properly considered the

opinion of plaintiff's treating physician, Wilfred W. Shiu, M.D.;[3] (3) whether the ALJ properly considered the side effects of plaintiff's medications; and (4) whether the ALJ posed a complete hypothetical question to the vocational expert. (Joint Stipulation ("Joint Stip.") at 3.) The Court addresses plaintiff's first two issues together.

**I.  The ALJ Failed To Provide Specific And Legitimate Reasons For Disregarding The Opinions Of Plaintiff's Treating Physicians.**

A treating physician's conclusions "must be given substantial weight." Embrey v. Bowen, 849 F.2d 418, 422 (9th Cir. 1988). Even when the treating physician's opinions are contradicted, "if the ALJ wishes to disregard the opinion[s] of the treating physician he . . . must make findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record." Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987); see also McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989)("broad and vague" reasons for rejecting the treating physician's opinion do not suffice). The ALJ can meet this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Brown, 881 F.2d 747, 751 (9th Cir. 1989).

On March 1, 2002, Wilfred W. Shiu, M.D., a public health physician who treated plaintiff from May 2000, through November 2002, and from April 2005, through January 2006, completed a Physician Statement at the

---

[3]  The ALJ mistakenly refers to Dr. Shiu as "Dr. Shier." (A.R. 445.)

request of the Social Security Administration.[4] (A.R. 228-29.) Dr. Shiu opined that plaintiff was limited to less than sedentary exertion, will have difficulties in maintaining social functioning, and difficulties in completing tasks in a timely manner due to deficiencies in concentration, persistence, and pace as a result of "chronic fatigue[5]," "depression," and "probable schizophrenia." (A.R. 228-29.) Dr. Shiu further noted that plaintiff has an "inability to concentrate fully," and her "fatigue leads to some weakness." (A.R. 229.)

In a March 20, 2003 report, Harvey A. Elder, M.D., an internist who treated plaintiff approximately monthly throughout most of the period from April 19, 2000, through August 2005, opined that plaintiff is limited to a less than sedentary physical exertional level, primarily due to difficulties standing and walking because of knee and back pain. (A.R. 329.) In response to a question asking for a description of plaintiff's "functional level," Dr. Elder noted that plaintiff had a Global Assessment of Functioning ("GAF") of 60,[6] had a "limited ability to care for [herself]," and was "depressed." (A.R. 329.) In response

---

[4] Plaintiff treated with various physicians at the San Bernardino Department of Corrections and the San Bernardino County Department of Public Health during 2003, and 2004.

[5] According to http://www.mayoclinic.com, chronic fatigue is a "complicated disorder characterized by extreme fatigue that may worsen with physical or mental activity, but doesn't improve with rest. Although there are many theories about what causes the condition - ranging from viral infections to psychological stress - in most cases the cause is still unknown." The primary signs and symptoms of chronic fatigue are: "fatigue" and "loss of memory or concentration."

[6] A GAF of 51-60 shows moderate symptoms, such as those which would affect speech, or moderate difficulty in social, occupational, or school functioning. Diagnostic and Statistical Manual of Mental Disorders Text Revision ("DSM"), 34 (4th ed. 2000).

to the same question in his July 23, 2003 report, Dr. Elder noted that: "[plaintiff] has problems with chronic fatigue, weakness, concentration, diarrhea, lower back pain, depression, [and] possible [schizophrenia]." (A.R. 363.) In describing the objective findings supporting the limitations he found, Dr. Elder noted plaintiff's "fatigue" and "inability to concentrate fully," and he further observed that plaintiff exhibited "findings/indications of a diagnosed mental impairment," *i.e.*, "depression" and "possible [schizophrenia]." (A.R. 364.)

In his written decision, the ALJ rejected the opinions of both Dr. Elder and Dr. Shiu, because in the ALJ's view, neither opinion is "supported by the evidence [and plaintiff] was working in illicit activity during this period," which "is indicative of her ability to work during the relevant time frame." (A.R. 445-46.) When examined in the light of the record as a whole, these reasons do not withstand scrutiny.

While the ALJ properly rejected Dr. Elder's opinion regarding plaintiff's back and knee limitations, which are not supported by the objective medical evidence, the ALJ's discussion of the evidence pertaining to plaintiff's mental impairment does not fairly represent the significance of her mental impairment and the limitations arising from it, as reflected in the record. For instance, although Dr. Elder's reports indicate that plaintiff has a limited ability to care for herself due to depression, as the ALJ acknowledges, Dr. Elder's reports also show more significant symptoms and limitations than the ALJ described in his discussion of the evidence. Specifically, Dr. Elder noted that plaintiff has "problems with chronic fatigue, weakness,

8

concentration [and] possible schizophrenia." (A.R. 363.) Dr. Elder opined that plaintiff's mental impairment renders her unable to concentrate fully -- a limitation that would clearly impact plaintiff in the workplace. (A.R. 364.) Although these aspects of Dr. Elder's opinion -- specifically, his opinion regarding plaintiff's problems with chronic fatigue, weakness, concentration, and possible schizophrenia -- are consistent with the record as a whole, the ALJ failed to mention these limitations in his discussion of the evidence, much less provide specific and legitimate reasons for rejecting them.[7]

Further, while the ALJ briefly mentions Dr. Shiu's opinion regarding plaintiff's chronic fatigue, depression, and possible schizophrenia, the ALJ fails to set forth the requisite specific and legitimate reasons for rejecting it. *See* Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995)(when the ALJ rejects the opinion of a treating physician, even if it is contradicted, the ALJ may reject that opinion only by providing specific and legitimate reasons for doing so, supported by substantial evidence in the record); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)(it is error for an ALJ to ignore or misstate the competent evidence in the record to justify his conclusion).

Moreover, the ALJ's rejection of the opinions of Drs. Elder and Shiu based on the fact that plaintiff, admittedly, is capable of working

---

[7] The ALJ also rejected Dr. Elder's opinion because he is not a licensed psychiatrist. (A.R. 446.) While it is true that Dr. Elder is not a psychiatrist, he has been plaintiff's internist and has treated plaintiff regularly since April 19, 2000. Dr. Elder's dealings with plaintiff over the several years certainly have given him insight into plaintiff's physical and mental health.

9

as a prostitute for two hours a day, this fact does not constitute a legitimate reason to reject their opinions. (A.R. 224, 438, 637-38.) The ALJ's casual reference to plaintiff's ability to engage in limited "illicit activity" to support his rejection of the opinions of plaintiff's treating physicians fails to demonstrate how plaintiff's ability to work part-time as a prostitute translates into the ability to engage in, and sustain, full-time competitive work. (A.R. 445.) *See* Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987)(disability claimant need not 'vegetate in dark room' to be deemed eligible for benefits); Fair v. Bowen, 885 F.2d 597, 602 (9th Cir. 1989)("The Social Security Act does not require that an individual be utterly incapacitated to be eligible for benefits, and many home activities may not be easily transferable to a work environment where it might be impossible to rest periodically or take medication.").

Accordingly, remand is required to allow the ALJ the opportunity to provide legally sufficient reasons, if such reasons exist, for rejecting the opinions of Drs. Elder and Shiu regarding plaintiff's mental limitations.

**II.  The ALJ Failed To Consider Properly The Side Effects Of Plaintiff's Medications On Her Ability To Work.**

When an ALJ evaluates a claimant's limitations, he must consider evidence regarding the side effects of medications. Social Security Ruling 96-7p indicates that the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" should be considered in the disability

evaluation. *See also* 20 C.F.R. § 416.929(c)(3)(iv). The Ninth Circuit has observed that an ALJ must "consider all factors that might have a significant impact on an individual's ability to work." <u>Erickson v. Shalala</u>, 9 F.3d 813, 817 (9th Cir. 1993)(citation omitted). Such factors "may include side effects of medications as well as subjective evidence of pain." *Id.* at 818.

In his decision, the ALJ briefly acknowledges plaintiff's testimony and records regarding the side effects of her medications,[8] but the ALJ does not expressly consider the impact of these side effects on plaintiff's ability to work.[9] The ALJ neither properly dismisses the significance of the alleged side effects nor, in his hypothetical to the vocational expert, references them. (A.R. 666.) The ALJ is required to consider those side effects in evaluating plaintiff's disability claim, and his failure to do so constitutes error.

As this case is being remanded so that the ALJ can reconsider the opinions of plaintiff's treating physicians, the ALJ should consider the

---

[8] Plaintiff's treatment records and the list of medications submitted by plaintiff at the hearing reveal that, at various times, plaintiff has been prescribed the following medications: viramune, risperdal, tylenol 3, norco, metronidazole, benzatropine, ranitidine, lotensin, megestrol, seroquel, and wellbutrin. (A.R. 138, 248, 272, 367-69.)

[9] Plaintiff complained of medication side effects of fatigue, weakness, nausea, diarrhea, and hair loss as a result of taking several medications for her mental impairment(s), HIV, and high blood pressure. (A.R. 248, 272, 363, 427, 656-57.) The Court notes, however, that although plaintiff may experience these symptoms, there are multiple references throughout the record to non-compliance with prescribed medication. (A.R. 253, 395, 535, 545, 560). The Court questions the extent to which these symptoms can be attributed to medication side effects or whether plaintiff's non-compliance is related to the side-effects of her medication.

impact of plaintiff's medication side effects, if any, prior to rendering his ultimate determination regarding plaintiff's disability.

**III. Until The ALJ Has Properly Considered Plaintiff's The Opinions Of Plaintiff's Treating Physicians, And Medication Side Effects, The Court Cannot Assess The Adequacy Of The Hypothetical Posed To The Vocational Expert.**

In posing a hypothetical to a vocational expert, the ALJ must accurately reflect all of the claimant's limitations. Embrey, 849 F.2d at 422-24. For the vocational expert's testimony to constitute substantial evidence, the hypothetical question posed must "consider all of the claimant's limitations." Andrews, 53 F.3d at 1044 (holding that hypothetical questions that do not include all of claimant's limitations are insufficient and warrant remand).

In this case, the hypothetical posed to the vocational expert may be incomplete to the extent that it does not reflect appropriately, in whole or in part, the opinions of Drs. Elder and Shiu and the alleged side effects of plaintiff's medication. On remand, the ALJ should either properly reject the treating physicians' opinions and the alleged side effects of plaintiff's medications in accordance with the governing legal standards, or the ALJ must incorporate them into the hypothetical posed to the vocational expert.

**IV. Remand Is Required.**

The decision whether to remand for further proceedings or order an

immediate award of benefits is within the district court's discretion. Harman v. Apfel, 211 F.3d 1172, 1175-78 (9th Cir. 2000). Where no useful purpose would be served by further administrative proceedings, or where the record has been fully developed, it is appropriate to exercise this discretion to direct an immediate award of benefits. *Id.* at 1179 ("the decision of whether to remand for further proceedings turns upon the likely utility of such proceedings"). However, where there are outstanding issues that must be resolved before a determination of disability can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated, remand is appropriate. *Id.* Here, remand is appropriate to allow the ALJ an opportunity to remedy the above-mentioned deficiencies and errors. *See, e.g.,* Benecke v. Barnhart, 379 F.3d 587, 593 (9th Cir. 2004)(remand for further proceedings is appropriate if enhancement of the record would be useful); McAllister, 888 F.2d at 603 (remand appropriate to remedy defects in the record).

Although not raised as an issue by the parties, it is unclear to the Court whether the payment of benefits to plaintiff is prohibited by her extensive substance abuse, of which there is abundant evidence in the record. (*See, e.g.,* A.R. 204, 400, 532, 545, 548, 556, 567, 569.) Indeed, although the ALJ erred in his assessment of the opinions of plaintiff's treating physicians regarding her mental health limitations and possible medication side effects, the Court is not suggesting that the ALJ's ultimate disability determination is incorrect. It does appear, however, that the ALJ side-stepped the issue of whether plaintiff's substance abuse is a "contributing factor material to" her mental limitations. *See* Bustamonte v. Massanari, 262 F.3d 949, 954 (9th

Cir. 2001)(ALJ errs by deciding an impairment is the product and consequence of alcohol abuse or drug abuse before deciding whether the impairment is disabling). Given the ALJ's express recognition that "[i]t appears [plaintiff] has never discontinued her cocaine abuse for any prolonged period" (A.R. 443), and Dr. Kikani's opinion that plaintiff's condition is "secondary to her problem related to psychoactive substance abuse, mostly crack cocaine" (A.R. 209), the Court questions whether the ALJ dismissed the significance of plaintiff's mental health limitations because of the extensive evidence of her substance abuse.[10]

Plaintiff bears the burden of proving that her substance abuse is "not a contributing factor material to [her] disability." *See* Parra v. Astrue, 481 F.3d 742, 747 (9th Cir. 2007)(plaintiff bears the burden of proving that substance abuse is "not a contributing factor material to his disability"). Nevertheless, on remand, if after properly addressing plaintiff's treating physicians' opinions regarding plaintiff's mental limitations and the alleged side effects, if any, of her medications, the ALJ concludes that plaintiff has a "severe" mental health impairment, then the ALJ should consider whether that impairment would remain in the absence of her substance abuse and, if so, whether it is disabling.

---

[10] Divy Kikani, M.D., a psychiatrist who examined plaintiff at the request of the Commissioner, opined that, "[f]rom the psychiatric point of view, [plaintiff] is moderately psychiatrically disabled from the underlying psychiatric condition, which, in my opinion, is in reaction to the medical condition and also secondary to her problem related to psychoactive substance abuse, mostly crack cocaine." (A.R. 209.)

## CONCLUSION

Accordingly, for the reasons stated above, IT IS ORDERED that the decision of the Commissioner is REVERSED, and this case is REMANDED for further proceedings consistent with this Memorandum Opinion and Order.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: September 21, 2009

*Margaret A. Nagle*
_____
MARGARET A. NAGLE
UNITED STATES MAGISTRATE JUDGE